**FEE PAID**

FILED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION : 55

2025 JUL 16 AM 11: 55

### DANA BENABOU,
*Plaintiff*

CENTRAL DIST. COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

**rsm**

v.

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES;
HON. ROBERT B. BROADBELT III, in his official capacity;
HON. UPINDER S. KALRA, in his official capacity;
HON. LIA MARTIN, in her official capacity;

**PRIME/PARK LABREA TITLEHOLDER, LLC, a Delaware limited liability**

**company**, real party in interest and landlord;

**VERONICA GUZMAN,**

individually and as attorney for Prime/Park Labrea Titleholder, LLC; and DOES 1 through 10,
inclusive,

**Los Angeles County Sheriff**

*Defendants,*

Case No.: **2:25-CV-06467-AB-PVCx**
(LASC Case No.: 24STCV30862)

### EMERGENCY FILING
### AMENDED VERIFIED COMPLAINT FOR:

- VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12132);
- VIOLATION OF CIVIL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983); .
- VIOLATION OF THE FAIR HOUSING ACT (42 U.S.C. § 3601 et seq.);
- DECLARATORY AND INJUNCTIVE RELIEF (28 U.S.C. §§ 2201–2202); and
- REQUEST FOR TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF TO HALT UNLAWFUL DETAINER PROCEEDINGS BASED ON ONGOING VIOLATIONS OF FEDERAL DISABILITY AND DUE PROCESS RIGHTS

Dana Benabou
5945 Colgate Avenue, #3228 Los Angeles, CA 90036
(323) 702-2182 dannaben42@gmail.com
Plaintiff, In Pro Per

## I. INTRODUCTION

1. This emergency action arises from ongoing state court proceedings that systematically violate federal disability and due process rights. The Superior Court conducted trial proceedings on July 15, 2025, where Plaintiff Dana Benabou could not meaningfully participate without abandoning her completely paralyzed husband to life-threatening medical complications. Defendants seek to enter judgment against Erez Benabou, a man who cannot speak, move, or retain counsel due to complete paralysis and aphasia. Although no default has yet been entered, judgment is imminent. This Court's immediate intervention is necessary under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Fair Housing Act, 42 U.S.C. § 3601 et seq.; and the Due Process Clause of the Fourteenth Amendment.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights).

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in Los Angeles County, California.

4. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, Federal Rule of Civil Procedure 65, and Ex parte Young, 209 U.S. 123 (1908).

## III. PARTIES

5. Plaintiff Dana Benabou resides at 5945 Colgate Avenue, Unit 3228, Los Angeles, California 90036. She has cognitive and communication disabilities that substantially limit major life activities within the meaning of 42 U.S.C. § 12102. She is the sole caregiver for her husband, who is completely paralyzed, and her minor daughter, who suffers from severe psychiatric disabilities. She appears pro se.

6. Defendant Superior Court of California, County of Los Angeles is a public entity as defined by 42 U.S.C. § 12131(1). It operates the Stanley Mosk Courthouse where the underlying proceedings occurred.

7. Defendants Hon. Robert B. Broadbelt III, Hon. Upinder S. Kalra, and Hon. Lia Martin are judges of the Superior Court sued in their official capacities only for prospective injunctive relief.

8. Defendant Prime/Park Labrea Titleholder, LLC, a Delaware limited liability company, owns and operates the apartment complex where Plaintiff resides.

9.  Defendant Veronica Guzman is an attorney representing Prime/Park Labrea. She is sued individually for conduct exceeding the bounds of legitimate advocacy.

10. Defendant Los Angeles County Sheriff is the agency responsible for executing evictions, sued in official capacity only.

11. Defendants Does 1 through 10 are individuals whose identities are unknown but who participated in the violations alleged herein.

## IV. FACTUAL ALLEGATIONS

### A. The Benabou Family's Medical Crisis

12. On June 27, 2023, Erez Benabou suffered a massive stroke that left him completely paralyzed from the neck down with severe expressive aphasia. He cannot move any part of his body below the neck, cannot speak, and cannot control any bodily functions.

13. Prior to the stroke, Mr. Benabou was the family's primary income earner. His catastrophic disability eliminated all household income while simultaneously creating overwhelming medical expenses.

14. Plaintiff Dana Benabou, who has her own documented cognitive and communication disabilities, became her husband's sole caregiver. She

provides 24-hour medical care, including monitoring vital signs, administering medications, and responding to medical emergencies.

15. The couple's 15-year-old daughter has been diagnosed with major depressive disorder, attention deficit hyperactivity disorder, and obsessive-compulsive disorder. She attempted suicide and required psychiatric hospitalization. Her treating psychiatrist has documented that housing displacement would likely precipitate another psychiatric crisis.

16. Despite these overwhelming circumstances, Plaintiff maintained current rent payments, often sacrificing medical necessities. The debt at issue consists solely of COVID-era rent arrears from 2021-2023.

**B. Prime/Park Labrea's Disability Discrimination**

17. Following Mr. Benabou's paralysis, Plaintiff requested reasonable accommodations from Prime/Park Labrea to enable her husband to use their dwelling. These requests included installation of a wheelchair ramp at the front entrance, accessible parking, bathroom grab bars, and repair of the unit's broken clothes dryer.

18. Prime/Park Labrea denied the request for a front entrance ramp. While the building has a ramp at the rear entrance, this does not provide equal access as emergency medical personnel require front entrance access. The

circuitous route to the rear creates dangerous delays during medical emergencies.

19. Prime/Park Labrea refused providing all necessary accommodation, and demanded over $1,500 in fees and deposits only for rear ramp—a prohibitive amount for a family overwhelmed by medical expenses. Unable to afford this, Plaintiff purchased and installed a cheap ramp that proved inadequate and unsafe for Mr. Benabou's power wheelchair.

20. The broken dryer created particular hardship. Mr. Benabou's incontinence generates constant laundry needs. Plaintiff cannot leave him unattended to use laundry facilities in another building. Despite knowing a paralyzed tenant resided in the unit, Prime/Park Labrea refused to repair the dryer for over three months.

21. Prime/Park Labrea denied every accommodation request without engaging in any interactive process, without considering alternatives, and without claiming undue hardship.

## C. Prime/Park Labrea's Retaliation

22. In July 2024, after months of unsuccessful attempts to obtain accommodations directly, Plaintiff filed a complaint with the Los Angeles

Housing Department alleging disability discrimination and failure to accommodate.

23. Prime/Park Labrea's retaliation was immediate. Beginning in October 2024, Prime/Park Labrea refused to accept Plaintiff's rent payments:

- October 2024: Returned Plaintiff's rent check sent via certified mail
- November 2024: Returned Plaintiff's rent check sent via certified mail

24. Certified mail receipts document these returned payments. Prime/Park Labrea manufactured the very default it now uses to justify eviction.

25. On December 5, 2024, Prime/Park Labrea filed unlawful detainer action No. 24STCV30862 based on the manufactured default.

**D. Prime/Park Labrea's Defective Eviction Notices**

26. The eviction is based on legally defective notices. On September 24, 2024, Prime/Park Labrea posted two three-day notices on Plaintiff's door.

27. The first notice demanded $50,866.59 for rent from November 2021 through January 2023. This constituted COVID-protected rent that could not support eviction proceedings until after February 1, 2024, pursuant to Los Angeles Municipal Code § 49.99.2(A).

28. The second notice demanded $7,762.00 for February and March 2023 rent. Under Los Angeles County COVID-19 Tenant Protections, this rent was protected from eviction proceedings until April 1, 2024.

29. Both notices violated California Code of Civil Procedure § 1161(2), which prohibits using the summary eviction process for rent more than one year old. The Court of Appeal held in Bevill v. Zoura, 32 Cal.App.4th 1191, 1197 (1995), that such notices are void ab initio.

30. Neither notice was filed with the Los Angeles Housing Department within three business days as required by LAMC § 151.09(G). This failure provides a complete defense to eviction under LAMC § 151.09(E).

31. No valid rental agreement exists for the period in question. The last documented rent was $3,881 per month, established in 2019. The COVID rent freeze prohibited any increases from March 2020 through January 2024. The Three-Day Notices were posted on the door only and were not personally delivered or mailed. There is no proof of diligent attempts at personal service prior to posting, and no mailed copies were received. This defective notice procedure violates California Code of Civil Procedure § 1162 and renders service invalid.

32. Service of the summons and complaint was equally defective. On December 4, 2024, process servers claimed substitute service on "Jane Doe, Doe."

Security camera footage from that date and time shows no person at
Plaintiff's door.

**E. Judge Broadbelt's Due Process Violations**

33. Plaintiff filed a Motion to Quash Service of Summons challenging personal
jurisdiction based on defective service.

34. At the April 2, 2025 hearing, Judge Broadbelt denied the motion and issued
an extraordinary order directing Plaintiff to file "an answer only" within five
days while explicitly prohibiting any demurrer or motion to strike. This
violated Plaintiff's statutory rights under California Code of Civil Procedure
§§ 430.10 and 435.

35. On April 11, 2025, Plaintiff filed a Petition for Writ of Mandate challenging
this order. California Code of Civil Procedure § 418.10(c) provides: "The
service of that notice shall stay the proceedings in the trial court until the
final determination of the proceeding." This stay is mandatory and
jurisdictional.

36. Despite the mandatory stay, Judge Broadbelt continued to act:

- April 17, 2025: Conducted ex parte proceedings without notice to Plaintiff

- Signed pre-drafted orders submitted by opposing counsel

- Set new deadlines later used to justify threats of default

37. The Court of Appeal denied the writ petition on April 26, 2025 as moot.

38. On May 7, 2025, Judge Broadbelt issued a minute order containing a
material falsehood. The order stated that a hearing on the motion to quash
had occurred on "February 25, 2025." Court records establish that no hearing
occurred on that date. The motion was heard on April 2, 2025.

## F. Judge Broadbelt's Violation of Disqualification Law

39. On June 11, 2025, Plaintiff filed a Statements of Disqualification pursuant to
California Code of Civil Procedure § 170.1, citing Judge Broadbelt's bias
and legal violations.

40. Judge Broadbelt struck the statements from the bench without affording
Plaintiff any opportunity to be heard.

41. Judge Broadbelt mischaracterized Plaintiff's corrected statement of
disqualification as a "duplicate" and struck it. Moreover, Judge Broadbelt
overruled Plaintiff's demurrer without leave to amend, adopting a tentative
ruling that accepted the landlord's conclusory statement of compliance with
housing laws over the facial defects raised. The court acknowledged the
complaint failed to allege service of the eviction notice to the Los Angeles
Housing Department as required by LAMC § 151.09(C)(9), but found that a
single generic allegation that **"all applicable requirements"** were met was

sufficient to survive demurrer. The court declined to address whether the

omission disclosed an affirmative defense on the face of the complaint and

ordered Defendant to answer within five days, further compressing time for

response in an unlawful detainer proceeding.

42. Judge's actions violated California Code of Civil Procedure § 170.3(c)(5),

which provides: "A judge who refuses to recuse himself or herself shall not

pass upon his or her own disqualification or on the sufficiency in law, fact,

or otherwise, of the statement of disqualification filed by a party."

43. On June 25, 2025, Plaintiff filed a Petition for Writ of Mandate challenging

Judge Broadbelt's unlawful refusal to recuse himself and his striking of both

the original and corrected disqualification statements in violation of Code of

Civil Procedure § 170.3(c)(5). The Court of Appeal denied the writ the next

day, June 26, 2025, and erroneously labeled the denial as a "summary

denial" under Rule 8.490(b)(1)(A) — despite the fact that the denial was not

summary and included no citation to that rule. Based on this mislabeling, the

Court of Appeal then improperly rejected Plaintiff's timely Petition for

Rehearing, filed on July 3, 2025, on the false premise that rehearing was

unavailable. The misclassification deprived Plaintiff of her right to appellate

review and shielded the trial court's disqualification violations from

correction.

## G. Judge Broadbelt's Discriminatory Conduct

44. On June 25, 2025, at 8:30 a.m., Plaintiff appeared and explained that her husband was experiencing a medical emergency with dangerously unstable blood pressure. She requested a brief continuance.

45. Judge Broadbelt responded: "All other paralyzed litigants appear in person in my court." This statement demonstrated categorical bias against persons with disabilities and refusal to consider individual circumstances.

46. At 11:00 a.m. the same day, Judge Broadbelt compelled Mr. Benabou to attempt to state his name for the record despite knowing that Mr. Benabou suffered from severe aphasia and could not speak.

47. The official court minutes for June 25, 2025, omitted the entire 8:30 a.m. session, including Judge Broadbelt's discriminatory statement. This violated California Rules of Court 2.550(a)(1), which requires minutes of all proceedings in open court.

## H. Judge Kalra's Denial of ADA Accommodations

48. On July 11, 2025, Plaintiff submitted a formal ADA accommodation request to Judge Kalra. This was her first comprehensive submission of medical documentation to support her request for trial continuance.

49. The submission included:

- Medical records showing Mr. Benabou's medical instability over the past few days.

- Signed HIPAA-compliant release authorization executed by Dana Benabou, permitting in-camera judicial review of her documented cognitive and psychiatric disabilities.

- Documentation regarding her daughter's psychiatric hospitalization for suicidal ideation, diagnosis and undergoing treatment.

50. Judge Kalra denied the accommodation request without conducting a hearing, without making the findings required by California Rules of Court 1.100(f), and without referring the request to the ADA Coordinator as mandated by Rule 1.100(g).

51. Despite having sealed medical documentation before him, Judge Kalra stated publicly that "no evidence" supported the accommodation request and characterized it as a delay tactic.

**I. Judge Martin's Denial Based on False Procedural Claims**

52. On July 14, 2025, Plaintiff submitted a renewed ADA accommodation request to Judge Martin with significant additional evidence:

- Dr. Khalili's formal medical letter dated July 11, 2025

- Private text messages and written communications demonstrating Plaintiff's cognitive impairment, confusion about legal procedures, and severe distress

- Documentation confirming that Plaintiff, despite good faith efforts, was unable to obtain counsel.

- Proof of service showing telephone notice was given to opposing counsel on July 11, 2025, before 10:00 a.m.

- Email service of a redacted version to opposing counsel on July 14, 2025

53. Judge Martin issued a minute order falsely claiming that Plaintiff had failed to provide prior ex parte information, failed to identify opposing counsel, failed to give proper notice, and failed to include a declaration of notice. Each of these claims is contradicted by filed documents.

54. When Plaintiff attempted to address these false statements, court staff physically blocked her from entering the courtroom, refused to return her documents, and threatened to summon law enforcement.

## J. Attorney Guzman's Interference with Disability Rights

55. Throughout the proceedings, Attorney Veronica Guzman engaged in conduct designed to exploit Plaintiff's disabilities and prevent accommodation.

56. In her July 10, 2025 opposition to Plaintiff's ADA accommodation request, Guzman falsely claimed that Plaintiff "made no mention of any disability" prior to July 2, 2025. Court records document Plaintiff's disability disclosures on June 11, 19, 23, and 25, 2025.

57. During ex parte telephonic notices, Guzman intimidated the Plaintiff to gain access to sealed medical records filed pursuant to California Rules of Court 1.100(f), claiming they "doubted their authenticity."

58. When Plaintiff's threatened Dana's support person for unauthorized practice of law. Using intimidation to isolate Plaintiff from needed assistance. Threatening criminal charges against Plaintiff's support person.

59. Attorney Veronica Guzman filed declarations falsely asserting that Plaintiff Dana Benabou had not disclosed any disability prior to July 2, 2025. In fact, Guzman had direct and repeated notice of Plaintiff's cognitive and psychiatric disabilities throughout June 2025, including oral disclosures at hearings and written filings on June 11, 19, 23, and 25. Plaintiff also explicitly informed Guzman that her treating provider, NP Anissa Spade of Brain Health USA, could serve as a witness to her disabilities, and invited Guzman to contact NP Spade directly. Guzman's declarations knowingly misrepresented the record to discredit Plaintiff's ADA accommodation requests and obstruct judicial recognition of her documented impairments.

60. In her July 10, 2025 opposition to Plaintiff's ADA accommodation request, Attorney Veronica Guzman selectively quoted fragments of Plaintiff's informal emails and messages, deliberately omitting context and tone. Guzman mischaracterized Plaintiff's communication as coherent and fluent, ignoring clear indicators of cognitive disorganization, confusion, and distress. She further distorted Plaintiff's language to argue against disability accommodations, despite having prior knowledge of Plaintiff's diagnosis and repeated references to her treating provider, Nurse Practitioner Anissa Spade of Brain Health USA. Guzman's conduct was knowingly misleading and intended to discredit Plaintiff's accommodation request by presenting an incomplete and manipulated picture of her cognitive functioning.

## K. Imminent Irreparable Harm

61. Trial occurred on July 15, 2025. Dr. Khalili has directed that Plaintiff cannot leave her husband unattended due to his medical instability.

62. If Plaintiff attended trial, her husband faced substantial risk of death from unattended medical complications. If she remained with him, the court threatened to enter default judgment.

63. The state court intends to enter judgment against Erez Benabou, a man who cannot speak, cannot move, cannot retain counsel, and cannot comprehend

the proceedings. No guardian ad litem has been appointed to protect his

interests.

**64.Eviction will result in:**

- Separation from life-sustaining medical equipment
- Disruption of established medical care

- Loss of wheelchair-accessible housing

- Probable psychiatric crisis for the minor child

- Substantial risk for Mr. Benabou due to separation from life-sustaining

  medical equipment

## V. CLAIMS FOR RELIEF

### <u>FIRST CLAIM FOR RELIEF Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132) (Against Superior Court and Judicial Defendants)</u>

65.Plaintiff incorporates by reference paragraphs 1 through 64.

66.Title II of the ADA provides that "no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

67. To establish a violation, a plaintiff must demonstrate: (1) she is a qualified individual with a disability; (2) she was excluded from participation in or denied the benefits of a public entity's services, programs, or activities; and (3) such exclusion or denial was by reason of her disability. Tennessee v. Lane, 541 U.S. 509, 517 (2004).

68. Public entities must make reasonable modifications in policies, practices, or procedures unless the entity can demonstrate that such modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

69. Plaintiff is a qualified individual with documented cognitive and communication disabilities. She is additionally protected under 28 C.F.R. § 35.130(g) based on her association with her disabled husband.

70. The Superior Court is a public entity subject to Title II. Courts must provide reasonable accommodations to ensure meaningful access to judicial proceedings. Tennessee v. Lane, 541 U.S. at 531.

71. Defendants violated Title II by:

- Categorically denying all accommodation requests without interactive process

- Failing to make findings regarding fundamental alteration or undue burden

- Expressing discriminatory animus toward persons with disabilities

- Physically excluding Plaintiff from courtroom proceedings

- Proceeding to judgment against Mr. Benabou without appointing a guardian

72. As a proximate result, Plaintiff has been denied meaningful access to the
courts.

## SECOND CLAIM FOR RELIEF Violation of Due Process - 42 U.S.C. § 1983
### (Against Judicial Defendants)

73. Plaintiff incorporates by reference paragraphs 1 through 72.

74. The Fourteenth Amendment prohibits states from depriving any person of
life, liberty, or property without due process of law.

75. Procedural due process requires notice and an opportunity to be heard "at a
meaningful time and in a meaningful manner." Mathews v. Eldridge, 424
U.S. 319, 333 (1976).

76. The process due depends on: (1) the private interest affected; (2) the risk of
erroneous deprivation through the procedures used; and (3) the
governmental interest. Id. at 335.

77. Plaintiff possesses a fundamental property interest in her home. The risk of
erroneous deprivation is extreme—the court seeks to enter default against a
man who cannot speak or defend himself while forcing his caregiver to

choose between his life and their shelter. The government has no legitimate interest in such procedures.

78. Acting under color of state law, Defendants violated due process by:

- Proceeding without jurisdiction during the mandatory stay

- Creating false entries in court records

- Permitting a judge to rule on his own disqualification

- Conducting proceedings that Plaintiff cannot attend without fatal consequences

- Refusing to appoint a guardian ad litem for an incompetent defendant

79. These violations shock the conscience and deprive Plaintiff of fundamental fairness.

## THIRD CLAIM FOR RELIEF Fair Housing Act - Failure to Accommodate (42 U.S.C. § 3604(f)(3)(B)) (Against Prime/Park Labrea)

80. Plaintiff incorporates by reference paragraphs 1 through 79.

81. The Fair Housing Act makes it unlawful to discriminate against any person in the terms, conditions, or privileges of rental of a dwelling because of a handicap of that person or a person associated with that person. 42 U.S.C. § 3604(f)(2).

82. Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

83. Housing providers must engage in an interactive process to determine appropriate accommodations. Failure to do so violates the Act. United States v. California Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997).

84. Prime/Park Labrea violated the FHA by:

- Refusing to provide front entrance wheelchair access without prohibitive fees

- Failing to repair an essential appliance for three months knowing a paralyzed tenant required it

- Categorically denying all accommodation requests without interactive process

**FOURTH CLAIM FOR RELIEF Fair Housing Act - Retaliation (42 U.S.C. § 3617) (Against Prime/Park Labrea and Guzman)**

85. Plaintiff incorporates by reference paragraphs 1 through 84.

86. Section 3617 of the Fair Housing Act makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" any right protected by the Act.

87. Protected activities include requesting reasonable accommodations and filing fair housing complaints. Adverse action following protected activity supports an inference of retaliation. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001*)*.

88. Plaintiff engaged in protected activity by requesting accommodations and filing a complaint with the Los Angeles Housing Department in July 2024.

89. In retaliation, Prime/Park Labrea immediately began refusing rent payments, manufactured a default, and filed eviction proceedings using facially defective notices.

90. Guzman participated in the retaliation by attempting to access sealed medical records, threatening Plaintiff's support person with arrest, and characterizing disability accommodations as "manipulation."

91. The temporal proximity between protected activity and adverse action establishes retaliatory motive.

## FIFTH CLAIM FOR RELIEF Declaratory Relief (28 U.S.C. § 2201)

92. Plaintiff incorporates by reference paragraphs 1 through 91.

93. An actual controversy exists between the parties concerning their respective rights and obligations under federal law.

94. A judicial declaration is necessary and appropriate to clarify the parties' rights and guide future conduct.

## SIXTH CLAIM FOR RELIEF Injunctive Relief

95. Plaintiff incorporates by reference paragraphs 1 through 94.

96. Plaintiff has no adequate remedy at law. Monetary damages cannot replace lost housing for a paralyzed individual requiring specialized medical care.

97. Without injunctive relief, Plaintiff will suffer irreparable harm through loss of housing and family separation.

98. The balance of hardships tips sharply in Plaintiff's favor. She faces homelessness and family destruction, while Defendants face only the requirement to comply with federal law.

99. Issuance of injunctive relief serves the public interest by enforcing federal civil rights protections.

# IMMEDIATE AND IRREPARABLE HARM REQUIRING EMERGENCY RELIEF

100.    The following irreparable harms are occurring without this Court's intervention:

1. A completely paralyzed, non-verbal man faces imminent judgment without any ability to participate or defend himself

2. No guardian ad litem has been appointed despite obvious incapacity

3. Plaintiff must choose between her husband's life and defending their home

4. Loss of wheelchair-accessible housing will likely result in death

5. Constitutional violations cannot be undone after judgment enters

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests **EMERGENCY RELIEF**:

**IMMEDIATE RELIEF REQUESTED:**

1. Temporary Restraining Order staying all proceedings in Superior Court Case
   No. 24STCV30862
2. Order prohibiting entry of any default or judgment
3. Order prohibiting issuance of any writ of possession

**AFTER HEARING:**

4. Issue preliminary and permanent injunctive relief: a. Declaring void any

judgment obtained in the underlying proceedings b. Requiring compliance with the

ADA in all proceedings c. Mandating reasonable accommodations d. Appointing a

guardian ad litem for Erez Benabou e. Prohibiting retaliation for assertion of

federal rights

5. Enter declaratory judgment that Defendants violated federal law
6. Award compensatory and punitive damages against Prime/Park Labrea and
   Guzman
7. Grant such other and further relief as the Court deems just and proper

Dated: July 16, 2025 Respectfully submitted

DANA BENABOU
Plaintiff in Pro Per

## **VERIFICATION**

I, Dana Benabou, declare under penalty of perjury under the laws of the United

States of America that the foregoing is true and correct to the best of my

knowledge, information, and belief.

Executed on July 16, 2025, at Los Angeles, California.

_____
DANA BENABOU
Plaintiff in Pro Per

**[PROPOSED] ORDER GRANTING TEMPORARY RESTRAINING
ORDER**

The Court, having reviewed Plaintiff's Emergency Complaint and finding

irreparable harm and likelihood of success on federal civil rights claims,

**ORDERS:**

1. All proceedings in Superior Court Case No. 24STCV30862 are immediately
   **STAYED**

2. No default, judgment, or writ of possession may be entered or issued

3. OSC re Preliminary Injunction is set for _____, 2025 at _____ a.m.

4. Bond requirement is waived due to indigency and civil rights nature

This Order shall remain in effect until further order of this Court.

Dated: July ___, 2025 _____ United States District Judge

**NOTICE OF LODGING OF SUPPLEMENTAL EXHIBITS
IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Dana Benabou hereby lodges the following supplemental exhibits in further support of her Ex Parte Application for Temporary Restraining Order:

Exhibit A: Emergency medical update regarding Erez Benabou's unstable condition, including high blood pressure in recent days

Exhibit B: Text messages showing Dana Benabou's repeated efforts to retain legal representation

Exhibit C: Dana Benabou Doctor's letter

Respectfully submitted,

Dated: July 15, 2025
/s/ Dana Benabou
Dana Benabou, Plaintiff Pro Se

**Exhibit A:**
**Emergency medical update regarding Erez Benabou's unstable condition, including high blood pressure in recent days**

Document for Benabou, Erez - 7/11/2025 - Document ID: 1263369889 Encounter ID: 327355418 (Patient ID: 138247991, DOB: 5/14/1964, Sex: M)

| | | | | | |
|---|---|---|---|---|---|
| Document ID: | 1263369889 | Patient ID: | 138247991 | Patient Name: | Benabou, Erez |
| Encounter ID: | 327355418 | Encounter Date: | 7/11/2025 | Location of Service: | Dr. Khalili Medical Office |
| Uploaded/Created: | 7/11/2025 4:13:23 PM | Document Status: | | Media Type: | Text |
| PE Signed By: | | PE Signed Date: | | | |
| Provider: | Imanuel Khalili, MD | Signed By: | | Signed Date: | |
| Document Date: | 7 / 11 / 2025 | Document Type: | Letters | Document Source: | |
| Document Title: | Letter to court to postpone eviction trial | | | Is Confidential? | ☐ |
| Upload Comments: | | | | | |

### Doctor Imanuel Khalili Medical Office

9029 W Pico Blvd,

Los Angeles, CA 90035

P: (424) 355- 0301, F: (216) 208- 1348

*Date: 7/11/2025*

*Patient: Erez Benabou*

*327355418*

To Whom it May Concerns,

This letter is to confirm that Erez Benabou is my patient and has been under my care since May 2024. He has history of hemorrhagic stroke & high blood pressure is currently wheelchair bound; his chronic medical problems include aphasia, right side body weakness, type 2 diabetes, hypertension, paroxysmal A fib, anxiety and depression.
Erez is currently homebound due to his chronic medical conditions and his wife works as his full-time caregiver for constant surveillance and medications management.

Erez has a court hearing scheduled July 15, 2025, and because of his chronic medical conditions, ambulation difficulty, and uncontrolled HTN he cannot present in the court and his appointment needs to be rescheduled.

If you have further questions, please do not hesitate to contact me.

Sincerely,

Imanuel Khalili, MD

IMANUEL KHALILI, M.D.
9029 W Pico Blvd.,
Los Angeles, CA 90035
Phone: (424) 355-0301

**14:39**





**Erez Doctor  Kallele** ›



I think I take to the hospital

This is too much after two pills  for high blood pressure

The only difference this week it's this pile



Text Message · SMS



Add a Caption

**Tuesday • Jul 8, 2025 •
19:39**                                    Adjust

☁ IMG_0480

**Apple iPhone 14 Pro Max**    HEIF ◎

Main Camera — 24 mm ƒ1.78

12 MP · 3024 × 4032 · 2 MB

| ISO400 | 24mm | 0ev | ƒ1.78 | 1/60s |

**DISTRICT**                    BEVERLY BLVD

    







**Wednesday • Jul 9, 2025 • 21:31**    Adjust

 IMG_0521

**Apple iPhone 14 Pro Max** 

Main Camera — 24 mm $f$1.78

12 MP · 3024 × 4032 · 941 KB

            



Add a Caption

**Thursday • Jul 10, 2025 • 09:04**          Adjust

 IMG_0537

**Apple iPhone 14 Pro Max**     HEIF

Main Camera — 24 mm ƒ1.78

12 MP · 3024 × 4032 · 1.9 MB

| ISO250 | 24mm | 0ev | ƒ1.78 | 1/60s |

DISTRICT          BEVERLY BLVD

    



Add a Caption

**Thursday · Jul 10, 2025 · 21:06**    Adjust

 IMG_0568

**Apple iPhone 14 Pro Max**

    



Add a Caption

Friday • Jul 11, 2025 • 12:03    Adjust

IMG_0609

Apple iPhone 14 Pro Max

Main Camera



**Exhibit B:**
**Text messages showing Dana Benabou's repeated efforts to retain legal representation**

 **Dana** 

Fri, Apr 11

Yoseph Assaf  Younes  # 331026 - Attorney Licensee Search

Attorney Licensee Search - The State Bar of California

search.app

https://search.app/NHRvPojHW2fSGRpu6

Shared via the Google app
4:45 PM

Wow so sorry mame all you going through with me with this shit I really appreciate it. It's not obvious thank you 5:01 PM

I call the lawyer asaf 5:04 PM

He  answer me but say give me 10 minutes I call you back 5:04 PM

So when  he call will explain it in Hebrew what what's happening and after I will  had you 5:05 PM

14:29 

    

**+1 (323) 370-0058** ›

Text Message • SMS
Sun, Jun 29 at 16:02

Hi DANA BENABOU,
This is a confidential
message from Stay
Housed LA. Thank you
for filling out the
request for legal
assistance on the Stay
Housed LA website. We
are currently
prioritizing legal
representation for
tenants who live in
priority zip codes. Your
address is not in a
priority zip code, so we
are unlikely to be able
to represent you. If we
have capacity, we will
contact you. Please

    

08:12 ✈

< 61    👤

+1 (323) 370-0058 ›

message from Stay Housed LA. You have already applied for legal services with Stay Housed LA. Your address is not in a priority zip code, so we are unlikely to be able to represent you. If we have capacity, we will contact you. Please find additional resources here on the self-help page of the Stay Housed LA website at https://stayhousedla.org/self-help-eviction-defense/

Sincerely,
Stay Housed LA

+    Text Message • SMS   🎤

around to a few places
in the meantime.

Ok

I finished cleaning erez
and do it

Sat, Jun 28 at 19:55

So would you be
available tomorrow at
10AM to do a virtual
call with a translator to
go over what you're
looking for and also will
do some prep before
the hearing just in case
since I have somebody
there

3 Replies

F 

08:10

**Oleg Volkov**

**Thu, Jul 3**

🔒 Messages and calls are end-to-end encrypted. Only people in this chat can read, listen to, or share them. **Learn more**

Oleg is a contact.

I am in court. I'll call back later
10:16


10:16

Can you take my case?
16:31

And of course I pay you

18:10

 1  Oleg Volkov

move forward
So please , you say you
can take my cases
so I will not look for
another lawyer.
I don't want to get
close to the trial and
look last minute for
lawyers.
So we need to move
forward so I know you
are my Lawyer for sure ,
Usually, I don't push like
this but because the
date of the trial, July 15
I know I need be ready
with a Lawyer

So please if you can
confirm appointment
date and time we can
meet
Thank you



21:22

62

+1 (833) 263-9238

Thu, Jun 26 at 13:53

**Law Office of Alberto Muñoz: Please complete the form in the link below.**

https://us.clio.link/cSylonJmtnHRoV7H1W-Pog

**If you have trouble accessing the link, please contact us directly. This is an automated SMS message; do not call or text this number.**

**Reply STOP to opt-out of text notifications. Standard message and**

+    Text Message · SMS

21:23

< 62    𝒴

Eviction lawyer Alberto

iMessage
Fri, Jun 27 at 17:42

Alberto@amunozlaw.-
com

Mon, Jun 30 at 16:45

Good afternoon you
call me at 5:00 ?

Mon, Jun 30 at 19:03

Alberto good evening. I
need to know if you can
represent me even for
the settlement.

I'm gonna go to the
office in the morning
sorry for bothering you

**16:52**





**+1 (310) 430-8498** >

Thu, Jul 3 at 16:30

**Can I call you later?**

Yes you can but just I need to know because the trial start at the 15 so I need to know if you can represent me?
Thank you
Dana benabou

Thu, Jul 3 at 18:14

Let me know if this interest you if not it's ok I move on to different Lawyer
Thank you have beautiful 4 in July

**I will call you after 8 PM**

iMessage

16:50

 78  

**+1 (310) 430-8498** ›

the trial start at the 15 so I need to know if you can represent me?
Thank you
Dana benabou

Thu, Jul 3 at 18:14

Let me know if this interest you if not it's ok I move on to different Lawyer
Thank you have beautiful 4 in July

I will call you after 8 PM

Ok

Ok thanks

Thu, Jul 3 at 20:45

 iMessage 

**16:50**

 

**+1 (310) 430-8498** ›



my husband condition believe me, I'm not that person that fight or play games  but in Covid,  I'm 12 years tenant that  pay every month and always paid in time and believe me if my husband didn't get the memory stroke, he would fill it. Pay them. Nobody plan this.

So what do you think? On the home and the jeffy lube ? Can you represent me or not?

Monday 14:09

Good afternoon my trial is on the 15 do you

 iMessage

07:17 ✈

< 59        ⬜📷

**+1 (310) 430-8498** ›

he would fill it. Pay them. Nobody plan this.

So what do you think? On the home and the jeffy lube ? Can you represent me or not?

Monday 14:09

Good afternoon my trial is on the 15 do you want to take my case or not if yes please call my friend sarvens she's better English from me and help me all this park la Brea case

If yes yes if no so no but I need answer

Delivered

 iMessage